In re Kenneth DESORMES, Debtor.

Kenneth Desormes, Appellant,

v.

Charlotte School of Law, Appellee.

Civil No. 3:12CV1281 (AWT).

United States District Court,
D. Connecticut.

Aug. 29, 2013.

Scott M. Charmoy, Charmoy & Charmoy, LLC, Fairfield, CT, for Appellee.

US Trustee, U.S. Trustee Office, New Haven, CT, for US Trustee.

*RULING ON BANKRUPTCY APPEAL*

ALVIN W. THOMPSON, District Judge.

The appellant, Kenneth Desormes ("Desormes"), appeals two orders of the Bankruptcy Court: (i) an order overruling an objection to a proposed sale of property (Adv. Proc. No. 10–50079, Doc. No. 70) and (ii) an order construing the notice of intent to sell as a motion under Fed. R. Bankr.P. 9019 and granting the same (Adv. Proc. No. 10–50079, minute entry dated July 31, 2012, entered on docket sheet on Aug. 30, 2012). For the reasons discussed below, these orders are being affirmed.

## I. FACTUAL BACKGROUND

On June 14, 2012, the Chapter 7 Trustee in the appellant's bankruptcy case (the "Trustee") filed a Notice of Intent to Sell to appellee Charlotte School of Law ("CSOL") the causes of action in the appellant's Fourth Amended Complaint. On June 21, 2012, Desormes filed an objection to the proposed sale. No one other than Desormes objected.

On July 31, 2012, the Bankruptcy Court held a hearing on the proposed sale and objection. The Bankruptcy Court determined that only Counts III through XI of the complaint (the "Causes of Action") could be sold because the court had previously held a trial on Counts I and II and had a draft decision on those counts. Observing that CSOL was "buying an action against [it and other defendants in the adversary proceeding], which obviously they're not going to prosecute" (Hr'g Tr. 8:11–12), the Bankruptcy Court construed the Notice of Intent to Sell as a motion to compromise under Rule 9019. The Bankruptcy Court ruled that the Causes of Action were assets of the bankruptcy estate rather than of Desormes, found that notice had been properly given and that the amount of money offered by CSOL to the Trustee for the Causes of Action was a satisfactory basis to allow the compromise, and overruled Desormes's objection.

## II. STANDARD OF REVIEW

District courts generally "review the legal conclusions of the Bankruptcy Court *de novo*, and its findings of fact under the clearly erroneous standard." *In re Motors Liquidation Co.*, 428 B.R. 43, 51 (S.D.N.Y.2010); *see also* Fed. R. Bankr.P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous. . . ."). However, approval of a compromise under Rule 9019 is reviewed for abuse of discretion. *See In re Iridium Operating LLC*, 478 F.3d 452, 461 (2d Cir.2007) ("The bankruptcy court's articulation of Rule 9019's standard for evaluating a settlement is a legal issue subject to de novo review. We review for abuse of discretion the reasonableness of that court's application of the Rule in approving the Settlement."); *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995) ("The approval of a compromise is within the sound discretion of the bankruptcy judge, however, and this court will not overturn a decision to approve a compromise absent a clear showing that the bankruptcy judge abused her discretion.").

## III. DISCUSSION

### A. Ownership of Causes of Action

A preliminary question in this matter is who owned the Causes of Action. The Bankruptcy Court concluded that the Causes of Action belonged to the bankruptcy estate, and not to Desormes. Desormes argues, however, that "the claims are not the property of the Estate." (Appellant's Br. (Doc. No. 19) at 15.) Desormes puts forth two arguments for why he owns the Causes of Action or at least a subset of the Causes of Action.

■ First, Desormes contends that "the Trustee had abandoned the claims" (Appellant's Br. 11) "by failing to object to the applicable exemption, and by failing to participate in Discovery and/or any pretrial investigation" (*id.* at 10). Abandonment of bankruptcy estate property is addressed in 11 U.S.C. § 554, which provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

The Causes of Action have not been ordered abandoned by the Bankruptcy Court or abandoned by the trustee following notice and a hearing, and the bankruptcy case has not closed. Thus, the bankruptcy estate did not abandon the Causes of Action.

■ Second, Desormes contends that he owns the Causes of Action that arose after his Chapter 7 bankruptcy case, "specifically, the claims for negligence and breach of contract...." (*Id.* at 14.) Pursuant to 11 U.S.C. § 541, the bankruptcy estate includes, *inter alia,*

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a). There is a split of authority regarding whether a cause of action that accrues after the bankruptcy petition is filed, but before the bankruptcy case is closed, belongs to the bankruptcy estate.

In ... *Correll v. Equifax Check Servs., Inc.,* 234 B.R. 8 (D.Conn.1997) ... the Court held that, pursuant to § 541(a)(7), a Fair Debt Collection Act cause of action arising out of dunning letters received by the debtor after the bankruptcy petition was filed constituted property of the estate. *See Correll,* 234 B.R. at 10. Other courts have reached similar conclusions based on § 541(a)(7). *See Polvay [v. B.O. Acquisitions Inc.],* 1997 WL 188127, at *2 ("Causes of action arising after the debtor files for bankruptcy generally become part of the estate."); *Stanley v. Sherwin–Williams Co.,* 156 B.R. 25 (W.D.Va. 1993) (debtor did not have standing to maintain cause of action for interference of contractual relations which arose prior to the discharge of his estate); *In re Griseuk,* 165 B.R. 956, 957–59 (Bankr. M.D.Fl[Fla].1994) (holding that personal injury action arising during the pendency of the bankruptcy proceedings was property of the estate); *DeLarco v. DeWitt,* 136 A.D.2d 406, 408, 527 N.Y.S.2d 615 (N.Y.App.Div.1988) ("Upon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires,

including a cause of action, vests in the bankruptcy estate."). However, other courts have held that post-petition, pre-discharge causes of action under similar circumstances are property of the debtor. *See In re Durrett*, 187 B.R. 413, 417–19 (Bankr.D.N.H.1995) (personal injury action arising post-petition did not become part of the bankruptcy estate); *In re Doemling*, 127 B.R. 954, 955–56 (W.D.Pa.1991) (tort claim arising out of post-petition automobile accident was property of the debtor, rather than the estate).

Taken together, these cases indicate that there may be no bright-line test for whether a cause of action that accrues post-petition will be included as part of the bankruptcy estate. Rather, in making such a determination, the Court should consider whether the cause of action "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *Doemling*, 127 B.R. at 957 (citing *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) and noting that it is still controlling, despite the revision of the bankruptcy code in 1978) (internal quotations omitted).

*Charts v. Nationwide Mut. Ins. Co.*, 300 B.R. 552, 557–58 (D.Conn.2003). Also, in *Channer v. Loan Care Serv. Ctr., Inc.*, the court observed:

District of Connecticut courts are split on whether a cause of action that accrues after the bankruptcy petition has been filed, but before the bankruptcy case is closed, is included in the bankruptcy estate. Several Connecticut courts have suggested that those causes of action are categorically included in the bankruptcy estate . . . .

Other courts have held that there is "no bright-line test for whether a cause of action that accrues postpetition [but while the bankruptcy case is still open, as it is here] will be included as part of the bankruptcy estate." Those courts have held that courts attempting to determine whether a post-petition cause of action is the property of the bankruptcy estate "should consider whether the cause of action is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start."

3:11CV135 SRU, 2011 WL 5238878, at *3 (D.Conn. Nov. 1, 2011) (brackets in original; internal citations omitted). Here, the result will be the same, namely, that the Causes of Action belong to the bankruptcy estate, whether or not the court takes the categorical approach.

Under the categorical approach, "[a]ny cause of action that a debtor possesses at the time [ ]he files for bankruptcy is included in the bankruptcy estate." *Tilley v. Anixter Inc.*, 332 B.R. 501, 507 (D.Conn. 2005). Likewise, "[c]auses of action that accrue after the filing of the bankruptcy petition are included in the bankruptcy estate if they accrue before termination of the bankruptcy proceeding." *Id.* at 507 (citing 11 U.S.C. § 541(a)(7); *Correll*, 234 B.R. at 10–11). Desormes's bankruptcy proceeding had not terminated at the time the causes of action at issue accrued. Thus, taking the categorical approach, any accrued Causes of Action, including the negligence and breach of contract claims, are property of the bankruptcy estate.

Even if the "no bright-line test" approach is taken, these Causes of Action are still part of the bankruptcy estate. Taking that approach, "the [c]ourt should consider whether the cause of action is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *Charts*, 300 B.R. at 557–58 (internal quota-

tion marks omitted); *see also Segal*, 382 U.S. at 380, 86 S.Ct. 511 ("Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)."). For example, courts have found that causes of action *were not* sufficiently rooted in the debtor's prebankruptcy past where causes of action related to breach of a corporate agency agreement that was entered into post-petition, even though a provision in the agreement purported to make the agreement retroactive to the pre-petition period, *see Charts*, 300 B.R. at 557–58; and where a tort cause of action arose from a debtor being struck by an automobile five months after filing her bankruptcy petition, *see Doemling*, 127 B.R. at 957. On the other hand, courts have found that causes of action *were* sufficiently rooted in the pre-bankruptcy past where a claim for loss-carryback refunds under the Internal Revenue Code was based on losses during the year in which the bankruptcy petition was filed, *see Segal*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428; and where a legal malpractice claim related to the debtor's relationship with his lawyers and advice provided by the lawyers well before the debtor filed for bankruptcy, *see In re Tomaiolo*, 90–40350, 2002 WL 226133 (D.Mass. Feb. 6, 2002).

In the present case, Desormes concedes that "[t]he harm alleged by [him] was caused by a sequence of events that occurred pre and post[-]petition." (Appellant's Br. at 14.) This concession is borne out by the facts. In December 2009, Desormes spoke with Frank Toliver ("Toliver"), the Associate Dean of Business and Finance at CSOL, regarding payment on a promissory note relating to tuition and fees for the Fall 2008 semester, and Toliver agreed to extend the payment deadline on the note to the time of registration for the upcoming Spring 2010 semester. Registration for the Spring 2010 semester began in early January. On January 12, 2009, Desormes and Toliver spoke again regarding payment on the promissory note. At that time, Desormes did not offer to make any payments on the note, but did request that he receive a stipend check for the Spring 2010 semester. On January 14, 2010, Desormes filed his Chapter 7 bankruptcy petition. The next day, i.e., January 15, 2010, Desormes withdrew from CSOL, indicating that he could not sustain the expenses of law school without receiving his stipend check.

The breach of contract claim, which is Count VI of the Fourth Amended Complaint, alleges that the defendants breached their contractual obligation to provide Desormes with a quality legal education and to provide financial aid and job placement services. The creation and breach of any such contract must have been occurred prior to the initiation of the bankruptcy proceedings. Thus, the breach of contract claim is sufficiently rooted in the time prior to Desormes's bankruptcy petition.

The negligence claim, which is Count VII of the Fourth Amended Complaint, alleges that (i) Desormes executed a promissory note with CSOL in 2008, and CSOL or defendant Infilaw "failed to comply with state and federal laws, rules, regulations, or guidelines designed to protect consumers entering into credit contracts" (4th Am. Compl. (Adv. Proc. No. 10–50079, Doc. No. 142) ¶ 80), and (ii) in the spring of 2010, the defendants seized Desormes's federal student loans and, in violation of a federal regulation, applied the seized funds to satisfy tuition charges from the 2008–2009 academic year. To the extent the negligence claim concerns alleged failures to comply with regulations in 2008, such

failures are clearly rooted in the pre-bankruptcy past. To the extent the negligence claim concerns an alleged improper seizure and use of funds in 2010, that claim is sufficiently rooted in the pre-bankruptcy past because (i) Desormes must have applied for any student loans for the Spring 2010 semester prior to filing his bankruptcy petition on January 14, 2010 (and then withdrawing from CSOL the next day), and (ii) the claim relates to a dispute between Desormes and CSOL arising prior to the filing of the bankruptcy petition, as evidenced by the timing and substance of the December 2009 and January 12, 2010 conversations between Toliver and Desormes.

The Causes of Action are as firmly rooted in the prebankruptcy past as were the claims at issue in *Tomaiolo*, where "[t]he Bankruptcy Judge correctly found that the malpractice claim had a substantial connection to events which occurred before Tomaiolo filed for bankruptcy," 2002 WL 226133, at *3, and in *In re O'Dowd*, where the court "acknowledge[d] that the conduct giving rise to the malpractice claim occurred post-petition, [but found] it conceptually impossible to sever that action from [the] debtor's pre-bankruptcy dealings with her attorney," *Charts*, 300 B.R. at 558 (quoting *In re O'Dowd*, 233 F.3d 197, 203–04 (3d Cir.2000)) (brackets and ellipsis from *Charts* omitted).

In addition, there is no contention that any of the Causes of Action were entangled to any extent with Desormes's ability to make an unencumbered fresh start, and nothing in the record suggests that was the case. Thus, taking the "no bright-line test" approach, the Causes of Action, including the breach of contract and negligence claims, are sufficiently rooted in the pre-bankruptcy past and are not entangled with the bankrupt's ability to make a fresh start.

Therefore, whether or not the court takes a categorical approach, the Bankruptcy Court was correct in concluding that the Causes of Action were the property of the bankruptcy estate.

## B. Rulings on the Objection and Rule 9019 Motion

Desormes contends that the Bankruptcy Court erred by overruling his objection to the proposed sale and granting the Rule 9019 motion after construing the notice of intent to sell as such a motion.[1] The Bankruptcy Court provided two reasons for its decision to overrule Desormes's objection to the Notice of Sale and grant the Rule 9019 motion: (1) Desormes "has no standing" to object (Hr'g Tr. 14:12–21) and (2) the Trustee obtained the "proper amount of money" for the Causes of Action (Hr'g Tr. 30:18–19; *see* Hr'g Tr. 30:16–32:5).[2]

 "[A] Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir.2000); *see also In re Gucci*, 126 F.3d 380, 388 (2d Cir.1997) ("To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant

---

1. While Desormes's statement of issues includes the question "[w]hether the Bankruptcy court erred by *construing* and granting the Trustees Notice of intent to [sell] property … as a Motion to Compromise claims" (Appellant's Br. 5 (emphasis added)), he does not argue that the decision to construe the Notice of Intent to Sell as a Rule 9019 motion was in error.

2. The Bankruptcy Court also noted that proper notice was given; however, notice is not an issue on appeal.

must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court. Such a test is stricter than Article III's 'injury in fact' test for standing." (internal citations marks omitted)). As in *60 E. 80th St. Equities, Inc.,* here there is "no evidence that a surplus is a reasonable possibility in these proceedings." *Id.* at 116. Therefore, Desormes lacks standing to object to the notice of sale (and the Rule 9019 motion).

Because Desormes lacks standing to object, the court does not need to reach the Bankruptcy Court's decision to overrule his objection on the merits or Desormes's challenge to the ruling on the Rule 9019 motion. In any event, for substantially the reasons set forth at pages 13–14 and 25–28 of the appellee's brief (Doc. No. 41), the Bankruptcy Court's decision to grant the Rule 9019 motion was not an abuse of its discretion.

## IV. CONCLUSION

The orders of the Bankruptcy Court are hereby AFFIRMED.

The Clerk shall close this case.

It is so ordered.